*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-226

GEORGE C. PAPAGEORGE, APPELLANT,

v.

JONATHAN ZUCKER & PATRICIA DAUS, APPELLEES.

FILED 09/14/2017
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-462-15)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued April 14, 2017                    Decided September 21, 2017)

*Emily Whelden*, with whom *Patrick C. Horrell* was on the brief, for appellant.

*Matthew D. Berkowitz*, with whom *Mariana D. Bravo* and *Sarah W. Conkright* were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

BECKWITH, *Associate Judge*: The appellant, George Papageorge, had a contract with his acquaintance, Matt Banks, that entitled Mr. Papageorge to most of the proceeds of a wrongful eviction claim Mr. Banks was pursuing. When that claim was settled, Mr. Papageorge informed Mr. Banks's lawyers, appellees

Jonathan Zucker and Patricia Daus, of his purported right to the proceeds, and then sued them for negligence and conversion when they disbursed the proceeds to their client, Mr. Banks, instead of to Mr. Papageorge. The trial court dismissed Mr. Papageorge's claims, and we now affirm that judgment.

## I.

Mr. Banks was renting a room in a single-family house in the District of Columbia when Eastern Savings Bank (ESB) foreclosed on the property. Mr. Banks assigned his rights under the Tenant Opportunity to Purchase Act (TOPA), D.C. Code §§ 42–3404.01 *et seq.* (2012 Repl.), to Mr. Papageorge, but continued living in the house for several years until ESB evicted him unlawfully. A week after this court held for Mr. Banks in the appeal from the eviction proceeding and reversed the judgment for possession that the trial court had entered in ESB's favor, *see Banks v. E. Sav. Bank*, 8 A.3d 1239 (D.C. 2010), Mr. Banks and his cotenant entered into an agreement with Mr. Papageorge. That agreement stated that the two tenants planned to sue ESB for unlawful eviction and that Mr. Papageorge, who had financed "extensive litigation to enforce, maintain and protect" the tenants' rights since 2001, would receive the lion's share of the proceeds from the wrongful eviction claim. Specifically, it provided that "[a]ny and all monies obtained from a suit for wrongful eviction and/or the

relinquishment of tenant rights and/or any other sources shall be distributed" in the following manner: Mr. Papageorge would be reimbursed "for all legal costs expended since 2001 involving ESB and the subject property" and would also receive 75 percent of the remaining sum, while Mr. Banks and his cotenant would each receive 12.5 percent. The agreement stated that "[i]t is further understood and agreed that Papageorge has financed all rent monies and will be reimbursed at the rate of 100%."

Mr. Banks hired Mr. Zucker and Ms. Daus to represent him in the wrongful eviction case against ESB. Before any suit was filed, Mr. Banks signed a settlement with ESB that gave Mr. Banks $100,000 in exchange for a release of the wrongful eviction and other claims. Mr. Papageorge learned of the settlement two days later, and his lawyer told Mr. Zucker that Mr. Papageorge had a claim to the settlement money. The same day, Mr. Papageorge showed Ms. Daus a copy of his agreement with Mr. Banks and his cotenant along with documentation of $88,740.86 in costs and fees he claimed he was owed. Despite Mr. Papageorge's repeated demands, Mr. Zucker and Ms. Daus refused to pay him out of the settlement money, and instead disbursed the money to their client, Mr. Banks. Mr. Papageorge asked the lawyers to stop payment on a check they had already given Mr. Banks, warning that the money would soon be gone because Mr. Banks would spend it, but they rebuffed him.

Mr. Papageorge subsequently brought a breach of contract suit against Mr. Banks for the money. The trial court granted summary judgment against Mr. Papageorge, but this court reversed. *See Papageorge v. Banks*, 81 A.3d 311, 313 (D.C. 2013). After our remand, Mr. Papageorge and Mr. Banks reached a settlement under which Mr. Banks gave Mr. Papageorge $20,000 in exchange for Mr. Papageorge's dismissal of the lawsuit with prejudice and release of his claims against Mr. Banks. The following month, Mr. Papageorge sued Mr. Banks's attorneys for conversion and, in the alternative, negligence. The trial court granted the attorneys' motion to dismiss under Rule 12 (b)(6).[1] Mr. Papageorge appeals from this dismissal.

## II.

Because this is an appeal from a motion to dismiss, we take all factual allegations in the complaint as true. *Solers, Inc. v. Doe*, 977 A.2d 941, 947-48 (D.C. 2009). Our review of legal questions is de novo. *Id.*

### A. Negligence

To prevail on a claim of negligence, a plaintiff must show that the defendant

---

[1] The court also denied as moot Mr. Papageorge's motion for leave to amend his complaint, while nonetheless indicating that it considered the amended complaint in deciding the motion to dismiss.

owed him a duty of care, that the defendant breached the duty, and that the plaintiff suffered damages as a result. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 806 (D.C. 2011). It is the first element that is at issue here. Mr. Papageorge acknowledges that, in general, attorneys owe a duty of care only to their clients. *See Scott v. Burgin*, 97 A.3d 564, 566 (D.C. 2014); *but see Needham v. Hamilton*, 459 A.2d 1060, 1062 (D.C. 1983) ("The rule requiring privity is not, however, without exception."). Citing *In re Bailey*, 883 A.2d 106, 116 (D.C. 2005), however, he contends that an attorney also owes a duty of care to a nonclient third party who presents the attorney with a "just claim" against property in the attorney's possession.

The "just claim" concept stems from Rule 1.15 of the District of Columbia Rules of Professional Conduct, which governs the ethical obligations of a lawyer who is in possession of property in which others claim an interest. In particular, the rule requires a lawyer to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." Rule 1.15 (c). Comment 8 on Rule 1.15 states:

> Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client.

In *Bailey*, we applied this concept to hold that an attorney violated Rule 1.15 when he failed to use settlement money to pay a doctor he had hired to treat his client. 883 A.2d at 116–21. The attorney had contracted "to withhold such sums from any settlement(s), judgment(s) or verdicts due said patient/client as may be necessary to adequately protect said doctor" but had not done so. *Id.* at 120. In that case, the "applicable law" under which the lawyer's duty arose was the law of contractual obligations.

In contrast, Mr. Papageorge identifies no source of "applicable law" under which Mr. Zucker and Ms. Daus owed him a duty of care other than Rule 1.15 itself and the case law interpreting that rule. Yet as Mr. Papageorge concedes, the Rules of Professional Conduct do not give rise to a private cause of action for their violation. The section of the Rules describing their scope states:

> Nothing in these Rules, the Comments associated with them, or this Scope section is intended to enlarge or restrict existing law regarding the liability of lawyers to others . . . . Moreover, nothing in the Rules or associated Comments or this Scope section is intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding.

While the ethical rules governing lawyers may be relevant to establishing the *standard* of care in malpractice actions, *see Waldman v. Levine*, 544 A.2d 683, 690-91 (D.C. 1988), they are not the source of a *duty* of care enforceable in tort. *See, e.g.*, *Ayyildiz v. Kidd*, 266 S.E.2d 108, 112 (Va. 1980); *Bob Godfrey Pontiac,*

*Inc. v. Roloff*, 630 P.2d 840, 848 (Or. 1981). Lacking a basis to conclude that Mr. Zucker and Ms. Daus owed Mr. Papageorge such a duty of care here, we affirm the dismissal of his negligence claim.

### B. Conversion

The tort of conversion consists of "an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property." *Washington Gas Light Co. v. Pub. Serv. Comm'n*, 61 A.3d 662, 675 (D.C. 2013) (quoting *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011)). The personal property at issue is generally chattel, but money can also be the subject of a conversion claim "if the plaintiff has the right to a specific identifiable fund of money." *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013).

Mr. Papageorge primarily argues that he had a valid contractual lien that Mr. Zucker and Ms. Daus refused to accept, and that the attorneys' wrongful failure to ratify the lien entitled him to an equitable lien. "Broadly speaking, equity may impose a lien to effectuate some underlying agreement between debtor and creditor or in other circumstances where justice requires." *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996). But here, regardless of the contractual rights that Mr. Papageorge's agreement with Mr. Banks and his cotenant may have given him

against those tenants, Mr. Zucker and Ms. Daus were not parties to that agreement and had no legal duty to ratify it. *Cf. Travelers Ins. Co. v. Haden*, 418 A.2d 1078, 1084 (D.C. 1980) ("In general, an attorney may be liable for failure to protect a lien imposed on his client's settlement proceeds, where he expressly agrees with the client and the creditor to do so."). As a general matter, there is no legal duty to make or join a contract. *See Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996) ("'Contract' imports a voluntary agreement to make an exchange."). And while Mr. Papageorge again points to the "just cause" theory to establish that the attorneys owed him this duty, as with the negligence claim above, this concept is drawn from the law of attorney discipline and depends on a duty created by some other "applicable law." Mr. Papageorge therefore cannot establish that he is entitled to an equitable lien.

Mr. Papageorge advances one other basis for his conversion claim: he asserts that he had a property right in the settlement money in the court registry, and that Mr. Zucker and Ms. Daus, though on notice of that right, unlawfully interfered with that right by signing off on the disbursement forms. In circumstances like those here, where Mr. Banks's attorneys came into possession of the property lawfully and where independent indications of conversion are lacking, "the settled rule" is that "a demand for [the property's] return is necessary to render [their] possession unlawful and to show its adverse nature." *Shea v.*

*Fridley*, 123 A.2d 358, 361 (D.C. 1956).

Mr. Papageorge made such a demand for the settlement money and it was rejected, and he thus has a viable conversion claim against the attorneys if the money was indeed his property. But it is in that regard that his conversion claim falls short. While contractual rights are *in personam* rights that bind only the parties to the contract, property rights are *in rem* rights that are "good and enforceable against all the world." Harlan Fiske Stone, *Law and its Administration* 57 (1915); *see also* Thomas W. Merrill & Henry E. Smith, *The Property/Contract Interface*, 101 Colum. L. Rev. 773, 776–77 (2001). Here, Mr. Papageorge signed a contract with Mr. Banks and his cotenant that gave him a right to the proceeds from the tenants' wrongful eviction claims, but this right was a contractual right enforceable against Mr. Banks and the cotenant, not a property right enforceable against whomever might be in possession of those proceeds. As Mr. Papageorge's only entitlement to the settlement money stemmed from the as-yet-unperformed contract with Mr. Banks and his cotenant, he did not have any property rights in the settlement money when he made his demand, and his conversion claim therefore fails.

## III.

Finding no error, we affirm the trial court's dismissal of Mr. Papageorge's

negligence and conversion claims.[2]

*So ordered.*

---

   [2] In light of our disposition, we need not address appellees' argument—raised for the first time on appeal—that Mr. Papageorge's claims are barred by res judicata. *See Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010).