DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

THE UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

Appellant,

v.

VALERIEMARIE MOORE,

Appellee.

No. 2D21-2685

_____

September 30, 2022

BY ORDER OF THE COURT:

Appellant's motion for rehearing, rehearing en banc, or certification is denied. The panel on its own motion grants rehearing, withdraws the opinion dated June 1, 2022, and substitutes the attached opinion. No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE
ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL
CLERK

DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____


THE UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

Appellant,

v.

VALERIEMARIE MOORE,

Appellee.


No. 2D21-2685

_____


September 30, 2022

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Hillsborough County; Darren D. Farfante, Judge.

Richard C. McCrea, Jr., and Cayla M. Page of Greenberg Traurig, P.A., Tampa, for Appellant.

Adam A. Schwartzbaum, Adam Moskowitz, Howard M. Bushman, and Barbara C. Lewis of The Moskowitz Law Firm, PLLC, Coral Gables, for Appellee.

Kansas R. Gooden of Boyd & Jenerette, P.A., Miami; and Robert J. Sniffen and Jeffrey D. Slanker of Sniffen & Spellman, P.A., Tallahassee, for Amicus Curiae Florida Defense Lawyers Association.

Janet R. Varnell of Varnell & Warwick, P.A., Tampa, for Amicus Curiae The National Association of Consumer Advocates.

CASANUEVA, Judge.

The University of South Florida Board of Trustees (USF) appeals a trial court order denying its motion to dismiss in which it asserted the defense of sovereign immunity. ValerieMarie Moore filed the underlying class action complaint against USF alleging claims for breach of contract and unjust enrichment based on the collection of student fees for on-campus services that were not offered due to COVID-19. The order at issue granted USF's motion to dismiss Ms. Moore's breach of contract claim for the limited purpose of allowing Ms. Moore to attach her registration agreement to her amended complaint, but it otherwise denied USF's motion to dismiss on the merits of its sovereign immunity defense. The order also dismissed Ms. Moore's unjust enrichment claim without prejudice to her ability to add allegations to support her claim. The issue raised in this appeal is whether the trial court erred in denying USF's motion to dismiss the breach of contract claim based on sovereign immunity. We affirm the trial court's refusal to

2

dismiss the claim at this stage of the proceeding, but our holding is without prejudice to USF's right to again raise the defense of sovereign immunity if supported by the facts.

## I. Standard of Review

Florida Rule of Appellate Procedure 9.130(a)(3)(F)(iii) gives district courts in this state jurisdiction to hear appeals involving nonfinal orders that deny motions asserting entitlement to sovereign immunity. "[B]ased on the plain and unambiguous language of the amended rule, our jurisdictional inquiry now focuses not on the challenged order, but rather on the motion that the order adjudicates." *City of Sweetwater v. Pichardo*, 314 So. 3d 540, 542 (Fla. 3d DCA 2020).

"Article X, section 13 of the Florida Constitution provides absolute sovereign immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment." *Lee Mem'l Health Sys. v. Hilderbrand*, 304 So. 3d 58, 60-61 (Fla. 2d DCA 2020) (quoting *Ingraham ex rel. Ingraham v. Dade Cnty. Sch. Bd.*, 450 So. 2d 847, 848 (Fla. 1984)). "The issue of a party's entitlement to sovereign immunity is a legal issue subject to the de

novo standard of review." *Id.* at 60 (citing *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724, 725 n.3 (Fla. 2015)).

However, when ruling on a motion to dismiss based on sovereign immunity, courts are required to treat as true the complaint's allegations, "including those that incorporate attachments, and to look no further than the amended complaint and its attachments." *City of Gainesville v. Dep't of Transp.*, 778 So. 2d 519, 522 (Fla. 1st DCA 2001) (first citing *Brewer v. Clerk of the Circuit Court*, 720 So. 2d 602, 603 (Fla. 1st DCA 1998); then citing *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526 (Fla. 1st DCA 1997); and then citing *Varnes v. Dawkins*, 624 So. 2d 349, 350 (Fla. 1st DCA 1993)). "A motion to dismiss is not a substitute for a motion for summary judgment, and in ruling on a motion to dismiss a complaint the trial court is confined to consideration of the allegations found within the four corners of the complaint." *Hurley v. Lifsey*, 310 So. 3d 1030, 1032-33 (Fla. 2d DCA 2020) (quoting *Baycon Indus., Inc. v. Shea*, 714 So. 2d 1094, 1095 (Fla. 2d DCA 1998)). Consequently, at this stage of the pleadings, the trial court was required to treat as true the complaint's allegations as well as attachments to the complaint.

4

## II. Circuit Court Pleadings

Ms. Moore filed a class action complaint alleging that during all semesters in 2020 and the Spring 2021 semester, USF collected fees for on-campus services that were not offered due to COVID-19. She alleged, "USF has improperly retained funds for services it did not provide, in violation of its express contracts with students which allow it to collect fees only for certain statutorily specified purposes."

In its motion to dismiss, USF argued that the breach of contract claim is barred by the doctrine of sovereign immunity. It alleged that the complaint's assertion that Ms. Moore entered into an express written contract with USF is a legal conclusion, which is insufficient to establish a cause of action for breach of contract. USF argued that two account statements attached to the complaint were not student invoices, and it argued that even if an invoice were attached, it would at most constitute a claim for breach of an implied contract.

At the hearing on the motion to dismiss, USF argued that it only waives sovereign immunity when it enters into an express, written contract, and if there is a contract in this case, it is an

5

implied contract.  Florida Defense Lawyers Association filed an

amicus brief in support of USF.  The National Association of

Consumer Advocates filed an amicus brief in support of Ms. Moore.

*III.  Analysis*

When the state enters into a contract authorized by general

law, the defense of sovereign immunity will not shield it from

litigation.

> In section 768.28, Florida Statutes (1981), the legislature has explicitly waived sovereign immunity in tort.  There is no analogous waiver in contract. Nonetheless, the legislature has, by general law, explicitly empowered various state agencies to enter into contracts. *See e.g.,* §§ 23.017, 153.62(11), 163.370, 230.22(4), 337.19(1), Fla. Stat. (1981).  Additionally, it has authorized certain goals and activities which can only be achieved if state agencies have the power to contract for necessary goods and services.  *See e.g.,* §§ 20.315, 945.215, Fla. Stat. (1981).

> It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract.  *Howard Cole & Co. v. Williams*, 157 Fla. 851, 27 So. 2d 352 (1946).  Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound.  *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 (D. Fla. 1923), *affirmed*, 296 F. 693 (5th Cir. 1924).

*Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

6

When the legislature has authorized a state entity to enter into a contract, it clearly intends that the contract be valid and binding on both parties. *Dep't of Transp. v. United Cap. Funding Corp.*, 219 So. 3d 126, 134 (Fla. 2d DCA 2017) ("[T]he government's obligations under the terms of an express written contract it was authorized by law to enter are subject to the same standards of contract performance and enforcement that would apply to a private party.").

Therefore, "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am Tobacco Corp.*, 471 So. 2d at 5; *see also United Cap. Funding Corp.,* 219 So. 3d at 135 ("[W]here the government has entered into an express written contract that it is statutorily authorized to enter, sovereign immunity cannot protect it from the same contract rules that govern the performance of the express written contract obligations of a private party to a contract.").

In the present case, the complaint alleged that there was an express written agreement. Ms. Moore's registration agreement was not provided to her prior to filing the complaint, but when she

received it, she filed it as an attachment in support of her opposition to the motion to dismiss.[1]  After the hearing on the motion to dismiss, the trial court granted USF's motion to dismiss Ms. Moore's breach of contract claim for the limited purpose of allowing Ms. Moore to attach the registration agreement to her amended complaint.

The registration agreement states, "By clicking 'Submit Changes' below, *I am entering a legal, binding contract with USF* and I hereby acknowledge that I have read and understand the terms and conditions of this registration agreement."  (Emphasis added.) Based on the clear language of the registration agreement, Ms. Moore entered into a legal, binding contract with USF.

USF argued at the hearing on its motion to dismiss that, even assuming the registration agreement is an express written contract, it does not set forth a promise by USF to provide any specific services in exchange for student fees.  Therefore, it contends, Ms. Moore cannot establish that USF breached a provision of the

---

[1] At the hearing, counsel for USF stated, "I am amenable to the Court's consideration of this document as if it was originally attached to the complaint."

contract. We conclude that the trial court correctly rejected this argument at this stage of the pleadings.

First, we note that this argument was not raised in USF's motion to dismiss. *See City of Sweetwater*, 314 So. 3d at 542 (holding that our jurisdictional inquiry focuses on the motion to dismiss based on sovereign immunity, not on the challenged order).

Further, a determination regarding whether the parties' "legal, binding contract" included a promise to provide on-campus services in exchange for fees is more appropriate at the summary judgment stage. Although Ms. Moore has sufficiently pleaded the existence of a contract, this is not necessarily "a typical contract situation where there is an express document with delineated terms that a plaintiff can reference." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1340 (S.D. Fla. 2020) (quoting *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020)). As noted above, the registration agreement states, "By clicking 'Submit Changes' below, I am entering a legal, binding contract with USF and I hereby acknowledge that I have read and understand the terms and conditions of this registration agreement." The agreement further states that Ms. Moore is responsible for knowing all registration

9

policies. Therefore, the "terms and conditions" of the registration agreement along with any associated registration policies must be examined to determine whether they contain a promise by USF to provide any specific services in exchange for the fees it charged students. Additionally, Ms. Moore agreed to "USF policies" when she clicked "Submit Changes" on the website and, therefore, USF policies must be examined to determine if USF promised to provide any specific services in exchange for student fees.[2]

Although USF argues in its brief that the "Registration Agreement and the USF policies make no promises to Moore regarding any specific services in return for her payment of student fees," USF's policies are not included in USF's appendix and the transcript does not reflect that the policies were provided to the trial court.

In *Zainulabeddin v. University of South Florida Board of Trustees*, No. 8:16-cv-637-T-30TGW, 2016 WL 1451726 (M.D. Fla. Apr. 13, 2016), the court denied USF's motion to dismiss based on

---

[2] Ms. Moore was also required to agree to pay the attorney's fees of USF in the event she defaulted on her payment.

10

sovereign immunity where USF argued that the student could not identify a valid written contract, but only a student handbook, which generally does not, standing alone, constitute a written contract. The court held that at this stage of the proceeding, the plaintiff was not required to identify a written contract, but instead was merely required to allege one. *Id.; cf. Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021) (noting in breach of contract action against a private university, courts have recognized "the proposition that a student handbook or publication can create contractual obligations on the part of [the] university that are not necessarily limited to the 'service' of providing a college degree." *Id.* (alteration in original) (quoting *Orzechowitz v. Nova Se. Univ.*, No. 13–62217–CIV, 2014 WL 1329890, at *3 (S.D. Fla. 2014))).

> "[T]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Mawakana v. Bd. of Trs. of Univ. of D.C.*, 926 F.3d 859, 869 (D.C. Cir. 2019) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).

> . . .

11

"[T]he relationship between a university and its students is contractual in nature." *Basch v. George Washington Univ.*, 370 A.2d 1364, 1366 (D.C. 1977) (per curiam). "[T]he terms set down in a university's bulletin become a part of that contract," but "the mere fact that the bulletin contain[s] language" on a topic "is not enough to support a finding that the language amounted to a contractual obligation." *Id.* at 1366-67 (citations omitted). "Whether a given section of the bulletin also becomes part of the contractual obligations between the students and the university . . . depend[s] upon general principles of contract construction." *Id.* at 1367. Other university publications can also constitute a part of the contract between a university and its students. *See, e.g.,* *Pride v. Howard Univ.*, 384 A.2d 31, 34 (D.C. 1978) (accepting parties' assumption that the Code of Conduct printed in the student manual constituted a part of the contract between the university and its students).

In cases "raising the construction of a student-university contract," " 'the document itself must be viewed as a whole' and 'the court should view the language of the document as would a reasonable person in the position of the parties.' " *Id.* (quoting *Basch,* 370 A.2d at 1367).

*Shaffer v. George Washington Univ.*, 27 F.4th 754, 762-63 (D.C. Cir. 2022) (alterations in original).[3]

*IV. Conclusion*

---

[3] In *Shaffer,* the court noted that there must be "language indicating that the provision of in-person education and on-campus services was an explicit term of the parties' agreements." 27 F.4th at 763.

We affirm the trial court order denying USF's motion to dismiss based on the defense of sovereign immunity without prejudice to USF's right to assert the defense in a motion for summary judgment.

Affirmed.

VILLANTI and LABRIT, JJ., Concur.

––––––––––––––––––––––––––––

Opinion subject to revision prior to official publication.