# United States Court of Appeals
## For the First Circuit

No. 20-1321

KEVIN G. AUBEE; CARRIE A. AUBEE,

Plaintiffs, Appellants,

v.

SELENE FINANCE LP; WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a
Christiana Trust, not individually but as trustee for Pretium
Mortgage Acquisition Trust,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

Todd S. Dion for appellants.
John T. Precobb, with Richard C. Demerle, Michael E. Swain,
and Demerle Hoeger LLP on brief, for appellees.

December 21, 2022

**KAYATTA**, <u>Circuit Judge</u>. Kevin and Carrie Aubee appeal from an order dismissing their complaint against defendants Wilmington Savings Fund Society, FSB ("Wilmington Savings") and Selene Finance LP. The Aubees contend that defendants' foreclosure on their property is void because defendants failed to strictly comply with the notice requirements in the Aubees' mortgage contract before foreclosing. For the following reasons, we reverse the dismissal of the Aubees' breach of contract claim against Wilmington Savings and otherwise affirm.

**I.**

In 2005, the Aubees borrowed $359,650 from a bank, granting a mortgage on their property in Smithfield, Rhode Island, as security for the loan. Following a series of assignments, Wilmington Savings was assigned both the note and the mortgage as a trustee for Pretium Mortgage Acquisition Trust.

Paragraph 22 of the Aubees' mortgage contract allows the mortgagee to accelerate the loan and invoke the statutory power of sale if the Aubees default. But that same paragraph also imposes certain notice requirements that the mortgagee must fulfill at least 30 days before accelerating the loan. Most importantly for our purposes, paragraph 22 states the following:

> The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

- 2 -

On April 3, 2017, Selene Finance, acting on behalf of Wilmington Savings, sent the Aubees a "Notice of Default and Intent to Accelerate."[1] The notice stated:

> If you have not cured the default within thirty-five (35) days of this notice, Selene, at its option, may require immediate payment in full of all sums secured by your Security Instrument without further demand or notice, and foreclose the Security Instrument by judicial proceeding and sale of the property and/or invoke the power of sale or any other remedies permitted by applicable law, and/or as provided within your Security Instrument.

Farther down, the notice stated:

> You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense to acceleration, foreclosure and/or sale of the property.

Thus, the notice included verbatim the language from paragraph 22 of the mortgage contract regarding the Aubees' rights, but it also inserted additional language that we underline in the following reproduction:

> You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense to acceleration, foreclosure and/or sale of the property.

---

[1] The complaint did not reference or attach this notice. But below, the Aubees conceded that Selene Finance sent the notice and that it is authentic, and the parties agreed that the court should consider the notice in adjudicating the motion to dismiss.

The added language in the second through fourth lines provides the object of the parties' dispute.[2] The reason for that added language appears to be that Rhode Island permits both judicial foreclosures and non-judicial foreclosures. That is, a mortgagee can elect to foreclose either through a judicial proceeding or through the statutory power of foreclosure without a judicial proceeding (if allowed by the contract). See R.I. Gen. Laws § 34-27-1 (authorizing judicial foreclosure); R.I. Gen. Laws § 34-11-22 (authorizing non-judicial foreclosure). Defendants aver that they "drafted the Notice to create a letter whose content conforms to the version of paragraph 22 used in both non-judicial foreclosure states as well as judicial foreclosure states, with 'and/or' conjoining the two (2) advisories." The phrase "the foreclosure proceeding" in the underlined language was therefore intended to refer only to a judicial foreclosure proceeding, at which mortgagors would be able to assert the non-existence of a default.

Defendants accelerated the loan and sold the property through a non-judicial foreclosure on June 18, 2018. The Aubees then filed a complaint in Rhode Island Superior Court. They sought, among other relief, a declaratory judgment that the foreclosure is void. They alleged that defendants breached the

---

[2] The Aubees do not claim that the added language in the last line rendered the notice non-compliant.

mortgage contract by foreclosing and conducting a sale without providing adequate notice required by paragraph 22 of the mortgage contract.[3] Defendants removed the case to federal court in the District of Rhode Island and moved to dismiss the complaint for failure to state a claim.

Defendants' motion to dismiss was referred to a magistrate judge, who issued a report and recommendation recommending dismissal of all claims. The district court adopted the report and recommendation in full and granted the motion to dismiss. This appeal ensued.

**II.**

**A.**

We review de novo the district court's grant of defendants' motion to dismiss for failure to state a claim. See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig., 779 F.3d 34, 39 (1st Cir. 2015). We accept as true the Aubees' factual allegations and draw all reasonable inferences in their favor. Id.

Sitting in diversity, we look to Rhode Island law to supply the substantive rules of decision. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000). Applying state law involves "interpreting

---

[3] The Aubees also asserted a second count for violation of a Rhode Island statute, but they abandoned that claim below.

and applying the rules of substantive law enunciated by the state's highest judicial authority, or, on questions to which that tribunal has not responded, making an informed prophecy of what the court would do in the same situation." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). In the latter scenario, "our task is to ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ." Id. "[W]e seek guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." Id.

**B.**

After the district court dismissed the complaint, while this appeal was pending, the Supreme Court of Rhode Island decided Woel v. Christiana Trust, 228 A.3d 339 (R.I. 2020). The Rhode Island high court held that, "[a]s a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale." Id. at 345. The court further held that a foreclosure sale conducted without strict compliance with the notice provisions is void. Id. at 348. The parties dispute whether Woel's holding applies to a case such as this in which the district court entered judgment before Woel was decided.

In adopting the strict compliance standard, the Supreme Court of Rhode Island acknowledged that "[o]ther states, including Massachusetts, Alabama, and Minnesota, also require strict compliance with paragraph 22 as a condition precedent to a valid foreclosure," id. at 346 n.11, and that federal courts applying Rhode Island law had "assumed that strict compliance with paragraph 22 is a condition precedent to a valid foreclosure sale," id. at 344 n.9. But it viewed the case as addressing "a matter of first impression" and creating a "new rule of law" in Rhode Island. Id. at 344, 348. Because of "[t]he potential impact this new rule of law could have on the finality of foreclosures," the Woel court opted to give its new rule only prospective effect. Id. at 348. Specifically, the court decreed that "the pronouncement in this opinion applies to the case at bar and to cases pending in the Superior Court in which this specific issue has been, or may be, raised." Id.

We are bound to follow the Supreme Court of Rhode Island's decisions regarding the prospective nature of its rulings. See Great N. Ry. Co. v. Sunburst Oil & Refin. Co., 287 U.S. 358, 364-65 (1932); Butler v. Deutsche Bank Tr. Co. Ams., 748 F.3d 28, 39 n.10 (1st Cir. 2014).

The parties agree that the Rhode Island court's statement that its holding shall apply "to the case at bar and to cases pending in the Superior Court" does not preclude application

of the holding to this case merely because this case is pending in federal court, rather than in the Rhode Island court system.

The parties' disagreement trains, instead, on whether the Supreme Court of Rhode Island intended Woel to apply to cases (besides Woel itself) pending on appeal, rather than in a trial court. Defendants' position rests on the court's description of the pending cases to which Woel would apply, namely "the case at bar and to cases pending in the Superior Court," with no mention of cases pending on appeal. For three reasons, though, we think that defendants place too much weight on this silence.

First, as best we can tell, there were no cases involving paragraph 22 notice other than Woel that were on appeal to the Rhode Island Supreme Court at the time Woel was decided, and defendants do not contend otherwise. Rhode Island also has no intermediate appellate court. Therefore, by applying the new rule to Woel itself and to all cases then pending in the Rhode Island Superior Court in which the issue has been or could be raised, the Rhode Island Supreme Court covered the entire universe of pending cases in the Rhode Island court system in which the adequacy of paragraph 22 notice was or could be at issue. There was no reason for the court to mention cases (besides Woel) pending on appeal, because there were no such cases in the Rhode Island court system. So we do not read into Woel's silence regarding cases pending on appeal an implicit intent to exclude such cases. Rather, we see

no good reason why the court would have wanted to exempt cases pending on appeal from its universal inclusion of pending claims. After all, Woel itself was a case pending on appeal.

Second, Rhode Island generally applies new rules of law "in the manner best suited to serve the interests of justice and to avoid hardship." Woel, 228 A.3d at 348 (quoting State v. Arpin, 410 A.2d 1340, 1347 (R.I. 1980)). It would not serve the interests of justice to allow the litigants in Woel to benefit from the rule while denying that benefit to other litigants who made similar arguments in cases pending on appeal, merely because Woel happened to be the case that set forth the rule. See, e.g., Fed. Nat'l Mortg. Ass'n v. Marroquin, 74 N.E.3d 592, 596 (Mass. 2017) ("[W]here multiple cases await appellate review on precisely the same question, it is inequitable for the case chosen as a vehicle to announce the court's holding to be singled out as the 'chance beneficiary' of an otherwise prospective rule." (quoting Galiastro v. Mortg. Elec. Registration Sys., Inc., 4 N.E.3d 270, 277 (Mass. 2014))). And applying Woel to a pending, not-yet-final challenge to a foreclosure creates no more hardship for the mortgagee than does applying the rule to Woel itself.

Third, we find further support for our interpretation of Rhode Island law in the Massachusetts Supreme Judicial Court's treatment of the same issue. In Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213 (Mass. 2015) -- Massachusetts's analog to Woel -- the

Massachusetts high court held that strict compliance with notice requirements was a necessary condition precedent for foreclosure. Id. at 1214, 1226. In Pinti, like in Woel, the court stated that its decision would apply prospectively and to the case at bar due to concerns about the finality of past foreclosures. Id. at 1227. But it expressly did not reach the question whether its holding should apply to other cases pending on appeal. Id. at 1227 n.25. The Massachusetts high court later answered that question in Marroquin, concluding that "the Pinti decision applies in any case where the issue was timely and fairly asserted in the trial court or on appeal before" Pinti was decided. 74 N.E.3d at 593.

We think that the Supreme Court of Rhode Island would proceed in tandem with Massachusetts in this regard. The Rhode Island high court found Pinti "instructive" in adopting the strict compliance standard for Rhode Island. Woel, 228 A.3d at 346. And it followed Massachusetts's lead in making the strict compliance standard prospective. There is no reason to think it would not similarly track Massachusetts in applying that standard to cases pending on appeal. Indeed, the opinion in Woel cites Marroquin favorably, and nowhere disagrees with its treatment of cases pending on appeal. Id. at 347. It would be odd if the Supreme Court of Rhode Island intended to implicitly depart from Massachusetts case law on the specific issue of application to

- 10 -

cases pending on appeal, while at the same time following Massachusetts in all other respects.

For these reasons, we conclude that the rule in Woel applies to this case and that a failure to strictly comply with the notice requirements in paragraph 22 would render the foreclosure void. We now turn to whether the Aubees have plausibly alleged that the notice they received failed to satisfy the strict compliance standard.

## C.

At first blush, the notice sent to the Aubees might appear to have complied with the paragraph 22 notice requirements. Paragraph 22 required that the notice "inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The notice, in turn, included all of those words in describing the Aubees' rights. The problem, say the Aubees, is that the notice informed them of those rights in a misleading manner that could cause a reasonable borrower to misunderstand how to assert them. This argument raises two questions: Does a notice that informs a borrower of rights fail to strictly comply if the notice can be reasonably read in a manner that causes the borrower to misunderstand how to assert those rights? And, if so, was this particular notice written in a manner that could cause such a misunderstanding?

The first question is easily answered.  Interpreting the Massachusetts Supreme Judicial Court's decision in Pinti, we have stated that "Massachusetts law requires that the paragraph 22 notice given to the mortgagor be accurate and not deceptive -- note the possible difference between the two concepts -- and the Supreme Judicial Court has made clear that inaccuracy or deceptive character can be fatal."  Thompson v. JPMorgan Chase Bank, N.A., 982 F.3d 809, 812 (1st Cir. 2020).  And the Massachusetts Supreme Judicial Court "agree[d] with the First Circuit that Massachusetts law under Pinti . . . requires that any notice given pursuant to paragraph 22 of the GSE Uniform Mortgage, regardless of whether hybrid, must be accurate and not deceptive."  Thompson v. JPMorgan Chase Bank, N.A., 158 N.E.3d 35, 41 (Mass. 2020).  In Pinti, for example, the notice failed to strictly comply because borrowers "could be misled into thinking that they had no need to initiate a preforeclosure action against the mortgagee but could wait to advance a challenge or defense to foreclosure as a response to a lawsuit initiated by the mortgagee -- even though, as a practical matter, such a lawsuit would never be brought."  33 N.E.3d at 1222.

We think it likely that the Supreme Court of Rhode Island would join Massachusetts in holding that notices fall short of strict compliance when they inform borrowers of their rights but do so in a manner likely to cause a reasonable borrower to misunderstand how to assert those rights.  An important rationale

for Rhode Island's adoption of the strict compliance standard was that "[s]trict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee." Woel, 228 A.3d at 346. And, in adopting that standard, the court found the Pinti decision "instructive," and that it "soundly reasoned that mortgagors could be misled into thinking that they had no need to initiate a lawsuit against the mortgagee and could instead advance a claim or defense in response to a lawsuit initiated by the mortgagee." Id. Moreover, the court found the notice in Woel problematic because it was "misleading, inaccurate, and, at best, incomplete." Id. Thus, we conclude that under Rhode Island law, as under Massachusetts law, a default notice fails to strictly comply with paragraph 22 if it is reasonably likely to mislead borrowers about how to assert their rights, even as it informs them of those rights.

That brings us to the question whether the notice given to the Aubees is reasonably likely to be read in a manner that would cause borrowers to misunderstand how to assert their rights. We agree with the Aubees that it has this potential.

The use of "and/or" to connect the rights described in the notice renders the notice easily susceptible to confusion. See William Strunk Jr. & E.B. White, The Elements of Style 40 (3d ed. 1979) (describing "and/or" as "[a] device, or shortcut, that

damages a sentence and often leads to confusion or ambiguity"). We think it likely that many borrowers would read the notice, as the Aubees do, to mean that they can choose to assert their defenses in a foreclosure proceeding or, alternatively, in their own court action. And the use of the word "the" preceding "foreclosure proceeding" implies that there will in fact be a foreclosure proceeding at which the borrowers will be able to assert defenses in all circumstances. Naturally, many borrowers would elect to skip the hassle of bringing a court action and opt instead to assert their defenses "in the foreclosure proceeding." This would work out fine for the borrowers whose mortgagees decide to go the judicial foreclosure route. But borrowers whose mortgagees utilize non-judicial foreclosures could be surprised to learn that they cannot in fact assert defenses "in the foreclosure proceeding," because a non-judicial foreclosure proceeding provides no opportunity to assert defenses. The only opportunity for those borrowers to assert their defenses would be in a court action that they brought themselves. For these reasons, the notice is misleading and fails to strictly comply with paragraph 22. See, e.g., Pinti, 33 N.E.3d at 1222.

Defendants contend that "the additional language in the Notice does not discourage the Appellants to assert their rights but, rather, explains that they may have different avenues to do so depending on what route Selene and Wilmington Savings took

- 14 -

towards foreclosure." They point to language farther up in the notice stating that "Selene, at its option, may . . . foreclose the Security Instrument by judicial proceeding and sale of the property and/or invoke the power of sale or any other remedies permitted by applicable law, and/or as provided within your Security Instrument." They argue that this language provides context for the later sentence informing borrowers of their rights. Defendants imply that because they described the mortgagee's choice of foreclosure procedures, a borrower would understand the relationship between the mortgagee's choice and the borrower's rights as follows: If and only if the mortgagee brings a judicial foreclosure action, the borrower will be able to assert defenses in that proceeding; otherwise, the borrower will have to bring a court action to assert defenses.

The problem with defendants' argument is that the notice does not explain any of this. All the notice says is that "[y]ou have . . . the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense." It does not match up those rights with the mortgagee's election of judicial foreclosure or non-judicial foreclosure in a manner that makes clear that the right to assert defenses "in the foreclosure proceeding" is unavailable in a non-judicial foreclosure. Said differently, merely stating that the mortgagee can choose between

judicial foreclosure and non-judicial foreclosure does not inform borrowers how that decision affects their rights.  And, as described above, borrowers could easily be misled into thinking that they have the option to choose between asserting their defenses in a foreclosure proceeding initiated by the mortgagee or asserting their defenses in their own court action, regardless of which type of foreclosure the mortgagee chooses.  Thus, the notice is "misleading . . . and, at best, incomplete." Woel, 228 A.3d at 346.

Defendants' argument suffers from another defect.  Their argument necessarily depends on their interpretation that the notice informs borrowers that they do not have the right to assert defenses "in the foreclosure proceeding" in every circumstance. But this same logic would apply to the right to bring a court action, because the rights are connected by "and/or" without further explanation.  Said differently, defendants' reading of the notice is that, depending on the circumstances, borrowers may have: (1) only "the right to assert in the foreclosure proceeding the non-existence of a default"; (2) only "the right to bring a court action to assert the non-existence of a default or any other defense to acceleration, foreclosure and/or sale of the property"; or (3) both of those rights.  See H.W. Fowler, A Dictionary of Modern English Usage 29, (Sir Ernest Growers ed., 2d ed. 1965) (describing "[t]he ugly device of writing x and/or y to save the

trouble of writing x or y or both of them"). Borrowers who read the notice this way would understand that there may be some circumstances (i.e., situation (1)) in which they do not have the right to bring a court action. This is problematic because paragraph 22 requires that the notice inform borrowers that they have the right to bring a court action -- not that they might have the right to bring a court action, depending on the circumstances. See Marroquin, 74 N.E.3d at 594 (holding that a notice stating "you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure" did not strictly comply with paragraph 22 (emphasis added)). Thus, under either interpretation of the notice, it is fatally defective.

In sum, the Aubees have stated a claim that the notice of default failed to strictly comply with the requirements of paragraph 22.[4] Therefore, dismissal of their claim against Wilmington Savings was improper.

---

[4] The Aubees make an additional argument that the added language renders the notice inaccurate because it falsely suggests that the Aubees had to wait until the mortgagee initiated a foreclosure proceeding to bring a court action asserting the non-existence of a default. This is plainly incorrect. The notice describes "the right to assert in the foreclosure proceeding the non-existence of a default" and "the right to bring a court action to assert the non-existence of a default" as two separate rights. It does not suggest that the existence or timing of the right to bring a court action is contingent on the occurrence of a foreclosure proceeding.

**III.**

The magistrate judge's report and recommendation -- which the district court adopted in full -- recommended that the case against Selene Finance be dismissed on the alternative ground that Selene Finance was not a party to the mortgage contract and therefore was not bound by its notice provisions. The Aubees do not challenge this alternative ground on appeal. Accordingly, we affirm the dismissal as to Selene Finance.

**IV.**

For the foregoing reasons, and with the benefit of Rhode Island case law post-dating the district court's decision, we reverse the dismissal of Count I of the Aubees' complaint (breach of contract) against Wilmington Savings. We affirm the dismissal of Count I against Selene Finance and the dismissal of Count II (the abandoned statutory claim) against both defendants. Costs are taxed in favor of appellants and against appellee Wilmington Savings.

- 18 -