# United States Court of Appeals
## For the First Circuit

Nos. 23-1188
     23-1192

SEAN BURT, individually and on behalf of himself and all others
    similarly situated, and LOGAN THOMSON, individually and on
      behalf of himself and all others similarly situated,

Plaintiffs, Appellants,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF RHODE ISLAND,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Paul J. Doolittle, with whom Todd M. Friedman, Law Offices of
Todd M. Friedman, P.C., Jason A. Ibey, Kazerouni Law Group, Peter
N. Wasylyk, Law Offices of Peter N. Wasylyk, Blake G. Abbott, Roy
T. Willey, IV, Eric M. Poulin, Poulin, Willey, Anastopoulo, LLC,
Robert J. Caron, Caron Law Office, John M. Bradham, Peter B.
Katzman, and Morea Schwartz Bradham Friedman & Brown LLP were on
brief, for appellants.
      Kathleen M. Sullivan, with whom Alex H. Loomis, Crystal Nix-
Hines, Shon Morgan, Marina Lev, and Quinn Emanuel Urquhart &
Sullivan, LLP were on brief, for appellee.

October 13, 2023

**SELYA**, **Circuit Judge**. The COVID-19 pandemic left a great many casualties in its roiled wake. Institutions of higher education were not spared. These appeals, which arise out of the curtailment of classes and services at the University of Rhode Island (URI) during the first months of the pandemic, are emblematic of the point.[1] The district court dismissed some of the plaintiffs' claims early in the litigation and proceeded — after the close of discovery — to grant summary judgment in favor of URI on the remaining claims. The plaintiffs appeal. Although our reasoning differs in certain respects from that of the district court, we affirm.

# I

We briefly rehearse the relevant facts and travel of the case. For this purpose, we construe the facts in the light most flattering to the nonmoving parties (here, plaintiffs-appellants Sean Burt and Logan Thomson) and draw all reasonable inferences in their favor. See Aubee v. Selene Fin. LP, 56 F.4th 1, 4 (1st Cir. 2022); Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 730 (1st Cir. 2022). Of course, different ground rules apply to motions to dismiss and motions for summary judgment. Compare Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 161 (1st Cir. 2020)

---

[1] Although the Board of Trustees of URI is the named defendant in both of the underlying actions, the university is the real party in interest. For ease in exposition, we therefore proceed as if URI itself was the defendant-appellee.

(explaining that in review of decision granting motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) facts are drawn from complaint and attachments), with McKenney v. Mangino, 873 F.3d 75, 78 (1st Cir. 2017) (explaining that evidence of record supplies template for review of decision granting summary judgment under Federal Rule of Civil Procedure 56). In our ensuing discussion, we adjust as needed for these differences.

**A**

URI is a public research university with a main campus in Kingston. In the spring semester of 2020, Burt was enrolled at URI as a full-time undergraduate student and Thomson was enrolled as a part-time undergraduate student.

To enroll, the plaintiffs were required to pay tuition and mandatory fees. The fees included a student services fee, a technology fee, and a health services fee. The multi-layered student services fee was composed of a student activities fee, a fee for the Memorial Union, a fee for the Fitness and Wellness Center (Fitness Center), a transportation fee, and a fee for capital projects.[2]

---

[2] For some part-time students, such as Thomson, the student activities fee was not part of the student services fee but, rather, was a separate required charge. In the interest of simplification, we treat it as part of the student services fee.

The dollar amounts for tuition and for fees were laid out in URI's 2019-2020 catalog. The catalog reserved a number of rights to the university. As relevant here, it stated:

- "Tuition, fees, and policies set forth in this catalog are subject to change without notice."

- "The student services fee covers the cost of the Memorial Union, transportation, Fitness and Wellness Center, and capital projects. The undergraduate [activities] fee supports funds that are distributed to the Student Senate for a wide variety of student programs and activities."

- "The technology fee covers the cost of various University technology expenses."

- "The health [services] fee covers the cost of . . . routine office visits with URI staff providers . . . ambulance/emergency transport services . . . pharmacy . . . administrative services provided at Health Services, and health education."

**B**

URI's spring semester began as scheduled on January 22, 2020. On March 9, though, the tectonic plates shifted: Rhode Island's chief executive, Governor Gina Raimondo, issued an executive order declaring a statewide disaster emergency in view

- 5 -

of the rapid spread of COVID-19. One week later, she prohibited gatherings of twenty-five people or more. And on March 28, she issued a stay-at-home order proscribing gatherings of more than five people.

In response, URI — like nearly all other colleges and universities in the country — moved its in-person classes online for the remainder of the semester, required almost all students to vacate campus housing, closed its recreation facilities (including the Fitness Center), and cancelled most in-person student services. Although URI offered a twenty-five percent refund of housing and meal-plan payments, it declined to refund any portion of tuition or other mandatory fees.

The plaintiffs remained enrolled at URI and continued to make progress toward their degrees even as the university shifted instruction online and restricted access to its campus. But they took steps to recover all or part of the tuition and fees that they had paid, filing separate putative class actions against URI.[3] Their complaints alleged breach of contract and unjust enrichment.

Specifically, each plaintiff alleged that he had entered a contract in which he paid tuition and fees to URI in return for

_____

[3] Burt's suit was filed directly in the United States District Court for the District of Rhode Island. Thomson's suit was filed in a Rhode Island state court but was subsequently removed to the federal district court. The two cases were heard together at the motion-to-dismiss stage and were formally consolidated thereafter. For present purposes, we need not distinguish between them.

- 6 -

URI's promises to provide both in-person, on-campus instruction and access to campus facilities and activities. The plaintiffs argued that the alleged contracts and promises were made either expressly or implicitly. And they argued that URI had breached its contract when it stopped providing in-person, on-campus instruction and circumscribed access to the campus. In the alternative, they argued that URI had been unjustly enriched by its retention of tuition and fees. As relevant here, they sought to recover pro-rated tuition and fees.

These actions were not only consolidated with each other, see supra note 3, but also were consolidated with similar actions against three other universities located in Rhode Island. All four universities moved to dismiss the pending complaints for failure to state claims upon which relief could be granted.[4] See Fed. R. Civ. P. 12(b)(6). With respect to URI, the district court granted the motions to dismiss regarding the tuition claims but denied them regarding the fee claims. See Burt v. Bd. of Trs. of Univ. of R.I. (Burt I), 523 F. Supp. 3d 214, 228 (D.R.I. 2021). The district court first determined that URI made no enforceable contractual promise to provide in-person, on-campus instruction.

_____

[4] The other universities were Brown University, Johnson & Wales University, and Roger Williams University. We do not consider the application of any of the holdings in the present case to claims against any of these other universities. None of them are parties to these appeals.

See id. at 221-22.  In addition, the court determined that URI had reserved the right to alter the administration of its academic offerings unilaterally, including transferring instruction to an online format.  See id. at 223.

There was more.  The court proceeded to dismiss the plaintiffs' implied breach of contract claims regarding tuition. It noted that the plaintiffs had not "allege[d] breach of implied contract specifically," id. at 223 n.10, but nonetheless went on to state that any such claim was impuissant because the plaintiffs had not sufficiently alleged that anything in the university's conduct "suggest[ed] an intent to promise access to in-person education," id. at 223.

So, too, the court dismissed the unjust enrichment claims as to tuition. The plaintiffs, it concluded, had failed sufficiently to allege that it was unjust for URI to retain tuition — "the school[] provided students with the promised courses and credits, while constantly adapting in the face of the pandemic no less."  Id. at 225.

The district court viewed the fee claims differently. To that extent, the court denied URI's motions to dismiss on the ground that the plaintiffs had made "plausible claims that they reasonably expected certain services . . . in exchange for the fees they paid."  Id. at 224.

Following the completion of discovery, URI moved for summary judgment. See Fed. R. Civ. P. 56(a). The plaintiffs opposed the motion, but the district court granted it. See Burt v. Bd. of Trs. of Univ. of R.I. (Burt II), No. 20-295, 2023 WL 1408202, at *9 (D.R.I. Jan. 31, 2023). The contractual language concerning the portions of the student services fee charged for student activities, transportation, and capital projects was — the court concluded — insufficient to create a specific or unconditional obligation for in-person access to any particular facility or service. See id. at *3. To the contrary, the language was elastic enough to afford URI the "discretionary use of these funds." Id.

In a similar vein, the district court viewed the statement that "[t]he technology fee covers the cost of various University technology expenses" as suggesting "no particular benefit, let alone access to specific physical facilities." Id. at *5. And as to the health services fee, the court concluded that the plaintiffs had failed to produce evidence adequate to make out a genuine issue of material fact. See id.

To wrap up the package, the district court granted URI's motion with respect to the portions of the student services fee charged for the Memorial Union and the Fitness Center. It determined that the record left genuine issues of material fact about what a student's reasonable expectations might be concerning

- 9 -

the contractual obligations attached to these fees and whether URI had met those expectations. Still, the court concluded that COVID-19 and the governor's ensuing prohibitions on public gatherings substantially frustrated and made impossible or impracticable the principal purpose of the contract. See id. at *6-7.

The district court also rejected the claim that URI had been unjustly enriched by retaining the whole of the plaintiffs' fee payments. In the court's view, the record established that URI had used the funds received from the payment of the fees to provide virtual services to students. See id. at *9. The court found no evidence that URI had unjustly "'pocket[ed]' the funds from these fees." Id. In that regard, the court observed that URI had "provided services in an alternative form" and "retain[ed] little, if any, of the benefit that it was conferred." Id.

These timely appeals followed.

## II

We review de novo a district court's allowance of a motion to dismiss under Rule 12(b)(6). See MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014). We are not bound by the district court's reasoning but, rather, may affirm an order of dismissal on any ground made manifest by the record. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). In conducting this review, we accept as true all well-pleaded facts set forth in a plaintiff's complaint and draw all reasonable inferences

- 10 -

therefrom to his behoof.  See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).  Although a complaint need not include exhaustive factual allegations to overcome a motion to dismiss, "it must nonetheless 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Id. at 442 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In working the decisional calculus applicable to motions to dismiss, we are not altogether limited to the face of the complaint.  For one thing, we "may look to matters of public record."  Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 15-16 (1st Cir. 2003) (quoting Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000)).  For another thing, we may look to the contents of documents "expressly linked to" the factual allegations of the complaint and to documents upon which those allegations depend.  Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

We add, moreover, that a grant of a motion to dismiss may "be premised on the inevitable success of an affirmative defense."  Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  When the entry of an order of dismissal depends on the primacy of an affirmative defense, we will uphold the order as long as "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information,

- 11 -

and (ii) those facts suffice to establish the affirmative defense with certitude."  Id.

Because the plaintiffs' actions were brought in diversity jurisdiction pursuant to the Class Action Fairness Act, see 28 U.S.C. § 1332(d), state law supplies the substantive rules of decision, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In this instance, we accept the parties' reasonable agreement that Rhode Island law controls.  See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) (holding that "a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement" as to which state's law controls).

## A

The plaintiffs argue that the district court erred in dismissing their tuition claims, which alleged that URI breached its contract by moving instruction online.  To establish a breach of contract under Rhode Island law, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff."  Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010).

"Contracts are often spoken of as express or implied." Restatement (Second) of Contracts § 4(a) (1981).  The gulf between an express and an implied contract implicates "no difference in

- 12 -

legal effect, but lies merely in the mode of manifesting assent." Id. Whereas the elements of an express contract must be found in "a single clearly expressed written document," Marshall Contractors, Inc. v. Brown Univ., 692 A.2d 665, 669 (R.I. 1997), the elements of an implied contract may be "determined from the relations of, and the communications between the parties," id.; see Cote v. Aiello, 148 A.3d 537, 545 (R.I. 2016).

Rhode Island courts have recognized that the student-university relationship is "essentially contractual in nature." Gorman v. St. Raphael Acad., 853 A.2d 28, 34 (R.I. 2004). That is true even though universities enjoy "broad discretion to meet [their] educational and doctrinal responsibilities." Id. The relevant sources for ascertaining the existence and nature of a contract between a student and a university typically include the university's catalog, student handbook, and the like. See, e.g., Gociman v. Loyola Univ. of Chi., 41 F.4th 873, 883 (7th Cir. 2022) (explaining that "school's catalogs, bulletins, circulars, regulations, and other publications, and customs" are part of contract between student and university); Havlik v. Johnson & Wales Univ., 509 F.3d 25, 34 (1st Cir. 2007) (stating that "relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook") (applying Rhode Island law). In examining language revealed in such sources, we look to "the parties'

reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." Havlik, 509 F.3d at 34.

Here, the plaintiffs' complaints allege that the tuition contract was "set forth by [URI] through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, publications, and course of dealing." The contract, they allege, stipulated — whether expressly or implicitly — that in return for the payment of tuition, URI "would enroll . . . and admit them to campus . . . [and provide] live, in-person instruction in a physical classroom." They further allege that URI's website and publications, which routinely mentioned aspects of in-person, on-campus instruction as well as the benefits of the physical campus, support their claim that they contracted for an in-person, on-campus education. So does the fact that URI separately marketed specific programs and classes that are only available online. Relatedly, they allege that URI's longstanding pre-pandemic practice of providing in-person, on-campus education — coupled with the fact that, prior to 2020, the university "had no plans whatsoever to offer its in-person classes via an online delivery model" — reinforces their contract claims. Finally, they allege that the fact that they had received in-person, on-campus instruction in their prior course of dealing

with URI (including the earlier weeks of the spring 2020 semester) bolsters this claim.

URI hastens to defend the district court's dismissal of the tuition claims. It submits that it made no contractual promise in its catalog or other materials to "provide exclusively in-person instruction." And even if there had been such a promise, it emphasizes, it retained the discretion to deviate from that promise. At bottom, URI insists that its relationship and communications with the plaintiffs did not plausibly give rise to a contract, express or implied, for in-person, on-campus instruction.

Fleshing out its defense, URI notes that the various references to the on-campus experience to which the plaintiffs allude make no mention of in-person instruction let alone explicitly promise such instruction. Those references, URI suggests, are merely "promotional materials." Put another way, they are "exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract." G. v. Fay Sch., 931 F.3d 1, 12 (1st Cir. 2019).

**B**

The plaintiffs' complaints do not plausibly state a claim for breach of an express tuition contract. It is nose-on-the-face plain that URI did not explicitly promise exclusive in-person, on-campus instruction in return for tuition. All the

catalog terms to which the plaintiffs have gestured are reasonably understood as "[v]ague and generalized representations" and, in turn, "are not contractually enforceable." Id. Thus, the plaintiffs have failed to make a plausible showing of an express contract for in-person, on-campus education.

## C

The plaintiffs' implied contract claims regarding tuition are trickier. To begin, the district court's rationale for dismissing these claims does not withstand scrutiny. The crux of the district court's error lies in its brisk extension of its analysis of implied contract claims against Brown University to the plaintiffs' claims against URI. See Burt I, 523 F. Supp. 3d at 223 n.10. An implied contract claim necessarily turns on a party's own representations and actions, see Bailey v. West, 249 A.2d 414, 416 (1969), and what Brown may have said and done would in no way bind URI.

With reference to URI, the court stated simply that "[n]one of the materials cited by Plaintiffs rise to the level of an implied promise for in-person education — again, at best, the statements amount to puffery and academic programming within university discretion." Burt I, 523 F. Supp. 3d at 223. We turn the lens of our inquiry to this rationale.

- 16 -

**1**

In assessing whether the plaintiffs plausibly alleged an implied contract, an inquiring court must go beyond published materials and examine the university's conduct and course of dealing with the plaintiffs. See Marshall Contractors, Inc., 692 A.2d at 669. Having undertaken such an examination, we believe that the plaintiffs plausibly alleged that there was an implied contract for in-person, on-campus instruction. The plaintiffs' payment of tuition and their prior experience receiving in-person, on-campus instruction at URI support a reasonable inference that in-person, on-campus education was part of the bargain that they struck. See Shaffer v. George Washington Univ., 27 F.4th 754, 764 (D.C. Cir. 2022) (drawing similar inference from plaintiffs' factual allegations that defendant universities "have a historic practice of providing on-campus instruction to students who pay the tuition associated with traditional on-campus — rather than online — education"); Ninivaggi v. Univ. of Del., 555 F. Supp. 3d 44, 51 (D. Del. 2021) ("This history, custom, and course of dealing, along with the school's statements, plausibly created an implied promise of in-person classes.").

Moreover, the university's promotional materials helped to form the basis for an implied promise of an in-person, on-campus education. Drawing all reasonable inferences in the plaintiffs' favor, we conclude that the plaintiffs plausibly

alleged that a reasonable person would have assumed that URI intended to bind itself to provide an in-person, on-campus education in exchange for the payment of tuition.[5]  See Shaffer, 27 F.4th at 764.

**2**

Under Rhode Island law, substantial frustration of a contract, express or implied, may be found upon the happening of a supervening event.  See Iannuccillo v. Material Sand & Stone Corp., 713 A.2d 1234, 1238 (R.I. 1998).  To establish substantial frustration, a contract must be partially executory; the supervening event must occur after the making of the contract; the absence of the event must be a fundamental assumption upon which the contract was made; and the occurrence of the supervening event must substantially frustrate the parties' principal purpose for the making of the contract.  See id.  "If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order

---

[5] To be sure, URI reserved certain rights in the catalog, advising that "[t]uition, fees, and policies set forth in this catalog are subject to change without notice."  This reservation was also part and parcel of any implied contract.  Here, however, we need not decide whether this reservation would have been reasonably understood to apply to totally unforeseen instances such as the pandemic, URI's response to it, and Governor Raimondo's concomitant emergency orders.  As we explain below, any implied contract for in-person, on-campus instruction into which URI and the plaintiffs may have entered was substantially frustrated and, thus, URI's duty was discharged.

- 18 -

is an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 264 (1981).

Here, the elements of a frustration defense are present in spades. As we explain below, they are also definitively ascertainable from the plaintiffs' complaints, documents expressly linked thereto, and the public record.

The plaintiffs have plausibly alleged that URI breached its implied tuition contracts with them when it moved instruction online in the middle of the spring semester of 2020. Consequently, we can say with assurance that there is a plausible claim that these contracts were only partially executed. And at the time the tuition contracts were entered, neither the plaintiffs nor URI held the basic assumption that Governor Raimondo's emergency orders would be issued. After all, the pandemic was a once-in-a-century event, which blossomed without warning and which could not reasonably have been anticipated. The governor's resulting orders, in turn, substantially frustrated the principal purpose of the contracts — the provision of in-person, on-campus instruction — and made performance of the contract impracticable. Even if the orders proscribing gatherings of more than five people might have allowed for small groups of in-person, on-campus instruction, the stay-at-home order shut the door on any such possibility. Because the elements of substantial frustration are plainly satisfied, we

hold that URI established the affirmative defense at the motion-to-dismiss stage. It follows inexorably that the plaintiffs' implied contract claims were appropriately dismissed.

**D**

Having found that URI was relieved of any contractual duty to provide in-person, on-campus instruction, we turn to the plaintiffs' fallback argument that URI was unjustly enriched when it retained the whole of their tuition payments. The district court dismissed these unjust enrichment claims, concluding that they had not been plausibly alleged. See Burt I, 523 F. Supp. 3d at 225.

The plaintiffs contend that the district court erred in dismissing their unjust enrichment claims stemming from URI's retention of their tuition payments. But their appellate briefs point to no allegations or evidence suggesting that URI spent less to educate them than the amount of tuition received. In fact, they argue that URI spent more. And their briefs do not argue that the value of the education received was less than the tuition paid and retained. Instead, they stand pat on their expectancy damage claim: that the value actually received was less than the value they would have received had URI performed — and even then, they focus on the fee claims rather than the tuition claims. Consequently, they have waived any right to appeal the district court's dismissal of their unjust enrichment claims insofar as

those claims involve the retention of tuition payments.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## III

This brings us to the district court's entry of summary judgment in favor of URI on the fee claims.  Summary judgment is appropriate when the moving party (here, URI) has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  Our review of the district court's ukase is de novo.  See Pleasantdale, 37 F.4th at 732.  We are not wedded to the district court's rationale but, rather, may affirm the entry of summary judgment on any ground supported by the record.  See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

## A

The plaintiffs' fee claims revolve around the question of whether URI breached its contract when it severely reduced (or in some instances cancelled) its on-campus services and activities following the governor's emergency orders.  As with the tuition claims, we interpret any express or implied contract concerning fees "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably

should expect the student to take from them." Havlik, 509 F.3d at 34.

**1**

We start with the express contract claims. In this regard, URI puts much weight on the generalized nature of the descriptions of the fees. As noted above, the university catalog states that the student services fee "covers the cost of" the Memorial Union, transportation, the Fitness Center, and capital projects. The student activities fee, which is embedded within the student services fee, "supports funds that are distributed . . . for a wide variety of student programs and activities." The technology fee "covers the cost of various University technology expenses." And the health services fee "covers the cost of . . . routine office visits with URI staff providers . . . ambulance/emergency transport services . . . pharmacy . . . administrative services provided at Health Services, and health education."

URI stresses the operative verb phrases "covers the cost of" and "supports" in these descriptions. In its view, these phrases belie any notion that it was under a contractual obligation "to provide exclusively in-person services in exchange for any of the asserted fees."

The plaintiffs resist this conclusion. They contend that the catalog's language gave rise to a reasonable expectation

- 22 -

that URI would provide them with in-person, on-campus services. Even while conceding that the descriptions of the various fees did not commit URI to use them to offer specific services and activities, the plaintiffs note that they do require URI to "cover[] the cost[s] of" and "support" the provision of physical services and activities.

We find the plaintiffs' contention unpersuasive. A university's representations in a catalog should be interpreted according to their "normal, everyday meaning." Lyons v. Salve Regina Coll., 565 F.2d 200, 203 (1st Cir. 1977). Unlike language guaranteeing access to on-campus facilities — which has been interpreted to give rise to a reasonable expectation of in-person use, see, e.g., Smith v. Univ. of Pa., 534 F. Supp. 3d 463, 475 (E.D. Pa. 2021) — the terms "cover[] the cost of" and "support" do not, in ordinary quotidian parlance, constitute a promise to provide such access, see Lyons, 565 F.2d at 203. These terms, therefore, cannot serve as a basis for a reasonable expectation of the provision of in-person services and activities. See, e.g., Shaffer, 27 F.4th at 767 (rejecting breach of contract claim regarding student activity fee given "no indication that this fee encompasses only in-person organizations and does not support student groups operating online"); Fiore v. Univ. of Tampa, 568 F. Supp. 3d 350, 374 (S.D.N.Y. 2021) (holding that contract stating that fees go "toward the 'support' of programs" does not create

- 23 -

obligation to provide "access" to any on-campus program); Chong v. Ne. Univ., No. 20-10844, 2020 WL 7338499, at *4 (D. Mass. Dec. 14, 2020) (holding that fee payments "to 'support' certain facilities during terms for which [plaintiffs] are enrolled in classes" does not give rise to "a claim for breach of contract" regarding access to particular facilities or services). This holds equally true for the various components of the student services fee, the technology fee, and the health services fee. We thus conclude that the plaintiffs have failed to make out a genuine issue of material fact as to whether an express fee contract existed that required URI to provide in-person services and activities. A reasonable factfinder would be compelled to find that it did not.

**2**

The question remains whether there was an implied contract to provide such in-person services and activities. As said, an implied contract may arise from outside a "single clearly expressed written document," such as through "the relations of, and communications between the parties." Marshall Contractors, Inc., 692 A.2d at 669.

URI argues that there was no such implied contract. In staking out this position, URI disclaims the district court's reasoning insofar as that court determined that the portions of the student services fee that represented the costs of the Memorial Union and the Fitness Center could give rise to contractual

- 24 -

obligations to provide in-person access to those facilities. <u>See</u> <u>Burt II</u>, 2023 WL 1408202, at \*3-4. The catalog's descriptions of the physical buildings and the associated amenities, URI insists, could not reasonably have induced an expectation of physical access thereto. To hammer home this point, URI notes that "[t]hese descriptions appear far later in the Catalog and are unconnected to the Catalog's description of the Student Services Fee."

The plaintiffs demur. In their view, the district court's analysis regarding the portions of the student services fee representing the costs of the Memorial Union and the Fitness Center was "spot-on." The catalog's descriptions of these facilities and amenities, they say, gave rise to the reasonable expectation that URI would provide them with in-person access in return for their payment of the fees. The district court's error, they assert, was "in not applying the same basic framework . . . to the other fees."

We think that a middle ground carries the day. There is a genuine issue of material fact as to whether URI's representations gave rise to implied contracts providing in-person access in return for the payment of some fees (but not others). We explain briefly.

We think it clear that there was no implied contract with respect to the student activities and capital projects portions of the student services fee. In the catalog, URI only

- 25 -

committed itself to use the student activities portion of the fee to "support[] funds that are distributed . . . for a wide variety of student programs and activities." URI never promised, explicitly or implicitly, to furnish any particular program or activity — let alone an in-person program or activity. Hosting virtual events was not unheard of even before the spring of 2020 — a fact illustrating that URI never obligated itself to provide only in-person activities.

The same is true for the capital projects portion of the fee. There was no basis for a reasonable expectation that URI would grant in-person access of any kind in return for the payment of this portion of the fee.

A similar analysis extends to the technology fee. Even though the plaintiffs have shown that they lost access to classrooms, computer labs, and print labs, they have not adduced any evidence that URI promised, explicitly or implicitly, to furnish any of these particular services. The catalog's broad language describing the use of the funds from this portion of the fee discounts this possibility. As the district court aptly observed, the catalog "does not even mention specific technologies or services that URI provides." Id. at *5. URI's previous use of these funds for a host of technological upgrades and licenses — and not just for in-person services — buttresses its claim that it made no such promise. The reasonable expectation arising from

- 26 -

both the language used in the catalog and URI's course of dealing did not, therefore, impose on URI any obligation for the furnishing of specific in-person technological services.

**3**

The health services fee falls into a different bucket. The catalog states that this fee "covers the cost of . . . routine office visits with URI staff providers . . . ambulance/emergency transport services . . . pharmacy . . . administrative services provided at Health Services, and health education." The only real question is whether the term "routine office visits" gave rise to an expectation that such visits would be conducted in person. On the one hand, in the contemporary world, "routine office visits" easily can mean virtual visits. On the other hand, we recognize that such virtual services became increasingly normal only in the wake of the pandemic.

We need not tarry. Even if the term "routine office visits" gave rise to an expectation of entitlement to in-person visits, the plaintiffs have failed to show that URI breached its ensuing obligation. Whereas URI demonstrates that it continued to provide students with both virtual and in-person visits, the plaintiffs supply no evidence showing that they were ever denied access to in-person medical services. As the district court observed, the plaintiffs "do not make specific allegations — nor do they adduce specific facts — that they were denied particular

- 27 -

in-person medical services."  Id.  There is thus no genuine issue of material fact as to whether URI breached an implied contract to provide in-person office visits for health-related purposes.

**4**

The Memorial Union, Fitness Center, and transportation portions of the student services fee are cut from a different cloth.  We think that there is a genuine issue of material fact as to whether URI implicitly promised in-person services in return for the payment of these fees.  The catalog's description of the Memorial Union as "hous[ing] a wide variety of social, educational, cultural, travel, and recreational services and facilities," its extensive depictions of the various recreational and athletic facilities (including the Fitness Center), and its regular past provision of access to these facilities and the campus shuttle service all reasonably may be thought to have led URI to expect that students would anticipate that they could access these facilities in person.  As the district court stated with respect to the catalog's description of the Bradford R. Boss Arena as "one of only two ice facilities in the state that operate for the entire year and are open for public skating," it is puzzling "to see how a student could expect anything less than in-person access to this facility for the entire semester, given this explicit language combined with the fact that one cannot virtually skate at this ice rink."  Id. at *4 n.4.  Thus, we conclude that it would not be

unreasonable for a student reading these catalog descriptions to expect in-person access to both the Memorial Union and the Fitness Center. The same holds true for the student's ability to use the campus shuttle. And these expectations would be strengthened where the student — in her prior course of dealing with URI — had previously enjoyed in-person access to these facilities and services. With these facts in mind, we conclude that the plaintiffs have made a showing of an implied contract regarding these portions of the student services fee sufficient to survive summary judgment.

**5**

This conclusion, though, does not end the matter. Notwithstanding the presence of genuine issues of material fact as to whether these implied contracts existed, it is abundantly clear that URI was discharged from any such contractual duty due to frustration. Our analysis resembles the analysis that we employed as to frustration of the implied tuition contracts. See supra Part II(C)(2).

For a start, the record shows that these three putative contracts — the Memorial Union contract, the Fitness Center contract, and the transportation fee contract — were all partially executed before Governor Raimondo issued the first emergency order. What is more, the parties could not have anticipated either the onset of the pandemic or the issuance of the governor's

emergency orders. Those orders constituted the "event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 264 (1981).

There is no doubt that the orders — especially the stay-at-home order — substantially frustrated the principal purpose of the contracts: the provision of in-person access to the facilities covered by the Memorial Union and Fitness Center portions of the student services fee as well as access to the shuttle service. Once the plaintiffs were no longer allowed to remain on campus and were forced to stay at home, there was little ability to go to the described facilities or to use the shuttle. Because it is luminously clear that the contracts were substantially frustrated, there remains no genuine issue of material fact for adjudication: any reasonable factfinder would be compelled to find that URI was discharged from its obligations due to frustration.

**6**

The short of it is that we affirm the district court's decision to grant summary judgment to URI on all of the fee claims. URI has demonstrated that there is no genuine issue as to any material fact concerning its obligations arising out of the fee contracts. On this record, a reasonable factfinder would be compelled to find that URI fulfilled its obligations arising out of the student activities and capital projects portions of the student services fee, as well as the technology fee. So, too,

such a factfinder would be compelled to find that URI fulfilled any contractual obligations arising out of the health services portion of the student services fee. Finally, such a factfinder would be required to find that URI was discharged from any contractual obligations arising out of the Memorial Union and Fitness Center portions of the student services fee and out of the transportation fee by virtue of substantial frustration. As such, summary judgment in favor of URI was entirely appropriate.

**B**

This leaves the plaintiffs' final plaint: that even if URI did not need to fulfill its obligations under various fee contracts due to substantial frustration, the plaintiffs were still entitled to full or partial restitution in order to prevent URI from being unjustly enriched. We must, therefore, determine whether the record discloses a genuine issue of material fact concerning unjust enrichment.

To recover under a theory of unjust enrichment, "a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." IDC Clambakes, Inc. v. Carney, 246 A.3d 927, 933 (R.I. 2021) (alteration in original) (quoting S. Cnty. Post & Beam, Inc.

- 31 -

v. McMahon, 116 A.3d 204, 210-11 (R.I. 2015)). The plaintiffs argue that the district court blundered when it determined that URI was entitled to summary judgment on their unjust enrichment claims. As they describe it, the court's determination that there were no genuine issues of material fact was both superficial and problematic. Their argument hinges on the theory that the district court improperly "shift[ed]" the burden of production to them.

The plaintiffs' riposte misses the mark. The function of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment). Although it is true that the moving party must start the ball rolling by averring "an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), this does not mean that the nonmovant is relieved of any burden. Even though the nonmovant enjoys a favorable presumption for the evidence it adduces, it still must point to evidence that a reasonable factfinder could employ to its behoof. See Kearney v. Town of Wareham, 316 F.3d 18, 22 (1st Cir. 2002).

Here, the plaintiffs have failed to meet this challenge. After URI adduced uncontradicted evidence showing that it continued to "provide[] Plaintiffs the 'benefit of their bargain' throughout Spring 2020" by continuing to use the funds from the

fees to provide students with services — albeit often remotely or with adaptations — and to cover related maintenance costs, it was incumbent upon the plaintiffs to rebut this evidence in order to advance their unjust enrichment claims. Yet, the record is silent in this respect: the plaintiffs have adduced no evidence that might support a showing that URI unjustly benefited from these funds. Instead, they merely contest the district court's conclusion that URI spent these funds on alternative services and accuse the court of "completely overlook[ing] the simple premise that [URI] allegedly spent more money on delivering a different, inferior product." This conclusory statement, without more, is wholly inadequate to show that a genuine issue of material fact exists on the question of unjust enrichment. It follows that URI was entitled to summary judgment on the plaintiffs' unjust enrichment claims.

## IV

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.